**Norman SMITH**

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION.**

Civ. A. No. 86–1711.

United States District Court,
E.D. Pennsylvania.

July 23, 1986.

Alan M. White, Community Legal Services, Inc., Philadelphia, Pa., for Smith.

Martin Burman, Pa. Dept. of Transp., Philadelphia, Pa., for Pennsylvania Dept. of Transp.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Appellant Norman Smith has appealed, pursuant to 28 U.S.C. § 158(a), from an order of the United States Bankruptcy Court for the Eastern District of Pennsylvania, refusing to enjoin appellee Pennsylvania Department of Transportation (PennDOT) from suspending his driver's license. The court concluded that PennDOT properly suspended Smith's license when he failed to pay a traffic citation, although he listed it in his Chapter 13 bankruptcy petition. Because I find that PennDOT's action violated the Bankruptcy Code's prohibition against discriminatory treatment of debtors, 11 U.S.C.A. § 525(a) (West Supp.1986), I will reverse the judgment of the bankruptcy court.

### I. FACTS

Smith, a Pennsylvania resident, held a valid Pennsylvania driver's license when he was issued a speeding ticket in Connecticut in April 1985. Two months later, Smith filed a Chapter 13 bankruptcy petition, listing the fine from the Connecticut traffic ticket as one of his debts. PennDOT then notified Smith that, because of a reciprocal

agreement between Pennsylvania and Connecticut, his license would be suspended unless he paid the fine or discharged it through the appropriate state court.

In September 1985, PennDOT issued a suspension notice, as a result of the unpaid Connecticut fine. Smith informed PennDOT that he had done the following: listed the fine in his bankruptcy petition; notified Connecticut of the listing; stated his intention to plead guilty to the citation; and asked the Connecticut traffic authority to discharge the fine through his bankruptcy. Despite this information, PennDOT refused to halt the suspension proceeding, and it continues to hold Smith's license.

In January 1986, Smith filed a complaint in the bankruptcy court, seeking the return of his driver's license. The court granted a preliminary injunction, ordering the return of the license pending final resolution of the suit. But in February 1986, the court denied Smith's motion for a permanent injunction. *In re Smith*, 58 B.R. 78 (Bankr. E.D.Pa.1986).

## II. CONCLUSIONS OF THE BANKRUPTCY COURT

Smith based his request for an injunction on three grounds. First, he contended that the post-petition license revocation proceedings involving a pre-petition citation for a minor motor vehicle infraction violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C.A. § 362(a). Second, Smith argued that his rights have been abridged under the anti-discrimination provisions of section 525(a).[1] And third, he asserted that his civil rights have been infringed in violation of 42 U.S.C. § 1983. *See Smith*, 58 B.R. at 79. The bankruptcy court rejected

each of Smith's contentions. Because I find that the court interpreted section 525(a) too narrowly, I will not address its findings with regard to the other two statutes.

The bankruptcy court acknowledged the applicability of section 525(a), stating: "§ 525 would be breached if PennDOT revoked the license *solely* because the debtor had not paid the fine." *Id.* at 81 (emphasis in original). But the court found that PennDOT acted as it did, not for that reason, but because Smith did not comply with either of the options offered him by the Connecticut traffic enforcement authority. *Id.* According to Connecticut and Pennsylvania officials, Smith had two choices: he could have pled guilty and paid the fine; or he could have contested the citation in Connecticut traffic court. Adopting this reasoning, the court found that the terms of section 525 had not been violated.

## III. DISCUSSION

Section 525(a) is a codification of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), in which the Supreme Court held that a state may not suspend the driver's license of a debtor whose tort judgment, resulting from an automobile accident, was discharged in bankruptcy. The Court stated that such discriminatory action would impermissibly conflict with the federal policy of a fresh start upon bankruptcy. *Id.* at 648–52, 91 S.Ct. at 1710–12. Section 525(a) was thus enacted to ensure that a state does not treat a debtor driver differently than a person who never incurred a debt. *See Henry v. Heyison*, 4 B.R. 437, 442 (E.D.Pa.1980) (§ 525 prohibits a state "from treating those with judg-

---

1. That section provides in part:
   [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been

   associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

   11 U.S.C.A. § 525(a).

ments discharged in bankruptcy differently from those who never had such debts").

Section 525 applies only if the debt is dischargeable. *Johnson v. Edinboro State College*, 728 F.2d 163, 165 (3d Cir.1984). Both parties agree and the bankruptcy court found that Smith's fine was a dischargeable debt within the provisions of section 525. *See Smith*, 58 B.R. at 80–81. Also, PennDOT is a governmental unit subject to the rule of section 525(a). I, therefore, must apply this statute, and consider whether PennDOT denied Smith his license solely because he was a debtor.

PennDOT contends that it did not discriminate against Smith because of his bankruptcy. It claims that it suspended his license because he failed to respond properly to the traffic citation. But the record contradicts PennDOT's assertion. PennDOT maintains that Smith should either have pled guilty and paid the fine, or contested it. Smith did notify the Connecticut traffic authority of his intention to plead guilty, but he never paid the fine. He did not pay it because he was insolvent at the time, and was in the process of filing for bankruptcy. Furthermore, Smith did not simply ignore the fine, but listed it on his bankruptcy schedule, and asked the Connecticut traffic authority to discharge the debt through his Chapter 13 proceeding.

It is unclear to me what further action Smith possibly could have undertaken in order to resolve this matter. PennDOT's position seems to be that Smith either had to pay the fine or to contest it. To suggest that Smith should appear in Connecticut traffic court to contest a citation for which he has acknowledged his guilt is patently wrong. Yet, given Smith's lack of resources, that would be his only choice under PennDOT's reasoning. Without question, PennDOT's suspension of Smith's license improperly penalized him for his inability to pay a minor traffic fine. Hence, PennDOT discriminated against him in violation of section 525(a).

## IV. CONCLUSION

Because PennDOT suspended Smith's driver's license despite his correct response to the traffic citation, I find that it discriminated against him in violation of the Bankruptcy Code. Accordingly, I will reverse the judgment of the bankruptcy court.