**In re Wallace Stine BEAN, SSN: 445–12–9328 and Mattie Mae Bean, SSN: 521–58–2195, Debtors.**

**Bankruptcy No. 86 B 06788 J.**

United States Bankruptcy Court, D. Colorado.

Oct. 16, 1986.

John A. Cimino, Cimino & Gonzales, Denver, Colo., for debtors.

Frank O. Bowman, III, Deputy Dist. Atty., Denver, Colo., for the People of the State of Colo.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Relief from Stay filed by the People of the State of Colorado ("State"). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(G), and this Court recognizes jurisdiction pur-

suant to 28 U.S.C. § 1334. A hearing was held on the motion on October 16, 1986.

The debtors are the sureties on an appearance bond posted in the case of *People v. Quintin Wortham,* Case no. 85 CR 1575. The debtors posted the $10,000.00 bond so that Quintin Wortham, their son, could remain free while appealing a conviction for first-degree criminal trespass. As security for the bond, the debtors pledged their Denver, Colorado residence.

Wortham failed to appear in Denver District Court on June 13, 1986, as ordered by Judge Roger Cisneros. On that same date, Judge Martin Steinberg forfeited the bond and issued an order to show cause why judgment should not be entered on the forfeiture. At a hearing on July 14, 1986, Wortham had still not appeared, and Judge Edward E. Carelli ordered that judgment enter on the forfeiture. Judge Carelli stayed the execution of the order for fourteen days, to allow the debtors time to produce Wortham. On July 28, 1986, the debtors filed their bankruptcy petition.

In deciding the instant motion, the Court must address two issues. First, the Court must determine if the automatic stay applies in a case where the state seeks to execute a judgment on the forfeiture of collateral for a personal appearance bond. Second, if the automatic stay applies to this case, the Court must consider whether the facts of the case warrant granting of relief from stay under § 362(d) of the Bankruptcy Code.

Section 362(a) of the Bankruptcy Code provides that a petition in bankruptcy operates as a stay of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a

judgment obtained before the commencement of the case under this title; ...

§ 362(b) specifies that the filing of a petition does not operate as a stay

... (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ...

■ Under these sections, the automatic stay will apply to the judgment rendered against the debtors in this case, unless the State's actions fall within the exemptions of §§ 362(b)(4) and (5). The legislative history of §§ 362(b)(4) and (5) indicates that § 362(b)(4) "is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." [124 Cong.Rec. H 11, 092 (Sept. 28, 1978); S 17, 409 (Oct. 6, 1986) ] If a governmental unit sues a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or if the governmental unit seeks to fix damages for such violations, the stay does not apply. [House Report No. 95–595, 95th Cong., 1st Sess. 342–3 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 51–2 (1978) ], U.S. Code Cong. & Admin.News 1978, p. 5787. However, § 362(b)(5) provides that while entry of an injunction, enforcement of an injunction, or entry of a money judgment are exempt from stay, enforcement of a money judgment is not, to avoid according a governmental unit preferential treatment to the detriment of other creditors. *Id.*

The Eight Circuit has held the term "police or regulatory power" to refer to "the enforcement of state laws affecting health,

**456**

welfare, morals, and safety, but not regulatory laws that conflict directly with the control of the res or property by the bankruptcy court." *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The bankruptcy court in the Eastern District of New York noted that the operation of § 362(b)(4) is limited to exercises of police powers which are urgently needed to protect the public health & welfare. *Matter of IDH Realty, Inc.*, 16 B.R. 55, 57 (Bankr.E. D.N.Y.1981); *citing, King Memorial Hospital, Inc. v. Dept. of Health and Services, State of Florida*, 4 B.R. 704 (Bankr.Fla. 1980). More recently, the District Court for the Eastern District of New York offered the following guidelines: "Whether governmental action falls within these exemptions depends on whether the government is protecting its pecuniary interest in the property of the debtor, or its interest in the public health and safety." *United States v. Caro*, 47 B.R. 995, 996 (E.D.N.Y. 1985); *citing, Missouri v. United States, supra.*

■ The operative factor would seem to be, then, whether the government action protects its own pecuniary welfare, or the health, safety, and welfare of the community. If the government proceeds against a pecuniary interest, it must necessarily be seeking money or property from the debtor. This trespasses on the assets of the estate, which are the sole province of the bankruptcy court. To provide additional defense of the court's exclusive territory, § 362(b)(5) prohibits the execution of a money judgment.

■ However, while this analysis forms a helpful conceptual starting point, and may offer guidance to the determination of very clear-cut cases, it breaks down under the complexity of the factual and policy issues of the instant case. In exercising its police or regulatory power to protect the public health, welfare, and safety, there is often little action that a governmental unit may take, short of arresting someone, which does not involve some sort of pecuniary interest. There may be cases, such as the one at bar, where the line between public welfare and pecuniary interest is so nebulous, and the policy consequences so grave, that the Court cannot easily classify the government's action. Instead, it must carefully weigh all the circumstances before determining whether that action was directed towards the debtors' property, or rather was to achieve protection of the public health, safety, and welfare.

An example of the dilemma that can arise appears in *In re Smith*, 58 B.R. 78 (Bankr.E.D.Penn.1986). The *Smith* court found that the Pennsylvania Department of Transportation did not violate the automatic stay when it instituted post-petition license revocation proceedings on a pre-petition citation for a minor infraction by the debtor, as this constituted exercise of a governmental unit's police or regulatory powers and was therefore exempt from the stay under § 362(b)(4). The court noted: "The fact that a fine is the only criminal sanction typically imposed for a minor violation of traffic laws does not transform the criminal action under scrutiny into a civil proceeding beyond the scope of a government's police or regulatory power." *Id.*, at 80.

■ In the case at bar, the State is proceeding in the only logical manner open to it following a defendant's failure to appear. It is causing the collateral securing the posted bond to be forfeited.

This action affects the debtors' property in a serious and tragic way, but this effect is secondary to the public welfare objectives served by the State's action. The system of bail serves several functions. First, a defendant needs time to prepare for a case being tried or appealed, and so may be freed on bond. Second, the public safety demands an incentive for a person out on bail to appear at trial, hence a bond must be posted as an incentive. Further, permitting defendants to leave jail on an appearance bond helps eliminate overcrowding in jails, and reduces the occurrence of incarcerating an untried defendant for a lengthy period. The concept of bail is

fundamental to Anglo-American law and central to our modern criminal procedure.

However, this entire system could be undermined or destroyed if those persons who post appearance bonds may simply discharge their obligations under the protection of the Bankruptcy Code. Much, if not all, of the incentive value of posting a bond would be lost, and judges would be far less likely to free defendants on bail. In addition, the prospect of losing some or all of the money put up for bond would cause bail bondsmen to be extremely hesitant about writing bonds, and courts to be extremely apprehensive about accepting bonds, whether secured or unsecured. Eventually, freedom on bail would be restricted to those defendants who could pay cash up front, i.e., wealthy defendants only. Poor and middle class defendants would be forced to languish in overcrowded jails. The end results would be the virtual destruction of our system of bail, dangerous overcrowding of jails with pre-trial detainees, and inequitable discrimination against those defendants not fortunate enough to possess thousands of dollars in ready cash.

Weighing the circumstances in this case, therefore, the Court must conclude that the overriding objective of the State in executing on the judgment is to promote the crucial public welfare goal of preserving the integrity of the State's bail system. That the government must do this in a way which affects property of the debtor does not, without more, remove the action from the scope of the exemption contained in § 362(b)(4), or place it in the restriction against the enforcement of money judgments contained in § 362(b)(5). The State's proceeding against the debtors' collateral is an exercise of its legitimate police powers, and the automatic stay does not apply. It is, therefore,

ORDERED that the State's Motion for Relief from Stay is denied as moot because the stay is inoperative as to its contemplated action.

FURTHER ORDERED that the State may continue proceedings as to the bond posted by the debtors, including execution on the judgment of forfeiture.